1  ESTHER G. BOYNTON (124072)
2  9100 Wilshire Boulevard
   Seventh Floor, West Tower
3  Beverly Hills, California 90212
4  Telephone: (310) 274-8201
   Facsimile: (310) 274-2330
5
6  Attorney for Plaintiffs
7
8
9              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
11
12  CRAIG ARTHUR HUMPHRIES and      )  Case No.:
    WENDY DAWN ABORN HUMPHRIES,     )
13                                  )  SACV 03-0697 JVS
                                    )  **COMPLAINT FOR DAMAGES**
14          Plaintiffs,             )  **AND INJUNCTIVE RELIEF**
15                                  )
        vs.                         )  Violation of Civil Rights
16                                  )  42 U.S.C. § 1983
    LOS ANGELES COUNTY; LEROY D.    )
17  BACA, Los Angeles County Sheriff; )  **DEMAND FOR JURY TRIAL**
18  MICHAEL L. WILSON individually and )
    in his official capacity as a Detective )
19  and/or Deputy of the Los Angeles County )
20  Sheriff's Department, CHARLES T. )
    ANSBERRY individually and in his )
21  official capacity as a Detective of the Los )
22  Angeles County Sheriff's Department, )
    BILL LOCKYER, Attorney General of )
23  the State of California, and DOES 1 )
24  through 10,                     )
25                                  )
            Defendants.             )
26  _____)
27
28      Plaintiffs allege as follows:

                          1
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**



ENTERED ON ICMS

AUG 3 0 2002

CV

08/27/2002 4:05:00 PM  Receipt #: 21958
           Cashier : ABELLAMY [LA 1-1]
Paid by: ESTHER G. BROWN, ATTORNEY AT LA
W
2:CV02-06717
2002-086900        5 - Filing Fee Civil(1)
Amount :                          $60.00
2:CV02-06717
2002-510000        11 - Special Fund F/F(1)
Amount :                          $90.00
Check Payment : 0108 /            150.00
Total Payment :                   150.00

# I.  JURISDICTION AND VENUE

1.     Plaintiffs bring this action for damages and injunctive relief pursuant to 42 U.S.C. § 1983, to redress the deprivation of rights secured to them by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution; this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.  Plaintiffs also append state law claims, over which this Court has jurisdiction pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district, and because all of the defendants reside in, maintain offices in, or are responsible for enforcing laws relevant to this litigation in this district.

# II.  INTRODUCTORY STATEMENT

3.     Based on false allegations generated and received from Utah, and without actively or properly investigating those allegations, the Los Angeles County Sheriff's Department ("LASD") arrested and incarcerated plaintiffs, Mr. and Mrs. Humphries, on felony charges of torture and cruelty to a child.  LASD thereupon seized plaintiffs' children (then ages 11 and 17) and took them into "protective custody" – without a warrant to do so, and in the absence of any evidence or probable cause to believe that these children were at risk of abuse or neglect.

4.     LASD's wrongful arrest of plaintiffs and seizure of their children prompted further, horrible events.  Los Angeles County detained the children and placed them in a foster home; petitioned to have the children declared dependents of the juvenile court; and filed a criminal complaint against plaintiffs.

5.     Ultimately the juvenile court found the allegations of abuse to be untrue and dismissed the dependency petition; the children were returned to plaintiffs' custody; and all criminal charges against plaintiffs were dismissed.  Nevertheless, LASD has reported plaintiffs for listing as child abusers in the Child Abuse Central Index ("CACI" or "Index"), the child abuse registry operated by the California Department of Justice ("DOJ").  Plaintiffs' CACI records "index," and point third

2

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  parties to, LASD's file of the false allegations and prejudicial reports on plaintiffs

2  that triggered this ordeal.

3      6.    Defendants have failed and refused to provide any opportunity or means

4  for plaintiffs to inspect, correct, challenge or reverse the Index records about them.

5  Meanwhile, these CACI records and the LASD files they "index" *are* accessible by a

6  broad array of other persons and agencies, for their use in making decisions of

7  fundamental importance to plaintiffs, such as whether the Humphries (or either of

8  them) are fit to hold certain licenses, certificates, jobs or positions; to be adoptive

9  parents or guardians; or to retain custody of their own children.

10      7.    Plaintiffs bring this action to seek damages for the injuries and

11  deprivations of rights that they have suffered from defendants' wrongful policies and

12  conduct, and to stop defendants from perpetuating and disclosing wrongful and

13  stigmatizing information about plaintiffs and their children

14  ### III.  THE PARTIES

15      8.    Plaintiffs CRAIG ARTHUR HUMPHRIES ("Mr. Humphries") and

16  WENDY DAWN ABORN HUMPHRIES ("Mrs. Humphries") are, and were at all

17  times mentioned herein, husband and wife, living in Los Angeles County.  Mrs.

18  Humphries is, and was at all times mentioned herein, employed as a special education

19  teacher at a public elementary school in Saugus.  Mr. Humphries is, and was at all

20  times mentioned herein, employed as an executive at a company in the Santa Clarita

21  Valley, and for years, was a volunteer soccer coach and basketball coach for his

22  children's teams.

23      9.    Defendant LOS ANGELES COUNTY ("COUNTY") is a local

24  government entity, duly authorized and formed under the laws of the State of

25  California.  The COUNTY comprises, oversees and monitors LASD and other

26  departments, including the Department of Children and Family Services ("DCFS").

27      10.    Defendant LEROY D. BACA ("BACA") is, and was at all times

28  mentioned herein, the duly elected Sheriff of the COUNTY, responsible for

3

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    supervising and managing the operations, and setting and implementing the customs
2    and policies, of LASD.   Defendant BACA is sued in his official capacity.

3        11.    Defendant MICHAEL L. WILSON ("WILSON") is, and was at all times
4    mentioned herein, employed by the COUNTY within the LASD.  During the events
5    of 2001 described in this complaint, defendant WILSON was a detective assigned to
6    the Lancaster, California satellite office of LASD's Family Crimes Bureau.
7    Defendant WILSON is sued in his individual capacity and in his official capacity.

8        12.    Defendant CHARLES T. ANSBERRY ("ANSBERRY") is, and was at
9    all times mentioned herein, employed by the COUNTY within the LASD.   During
10    the events of 2001 described in this complaint, ANSBERRY was a Detective in the
11    LASD Family Crimes Bureau office in Lancaster, California.  Defendant
12    ANSBERRY is sued in his individual capacity and in his official capacity.

13        13.    Defendant BILL LOCKYER ("ATTORNEY GENERAL") is, and was at
14    all times mentioned herein, the duly elected ATTORNEY GENERAL of California
15    (the "State").  The ATTORNEY GENERAL directs and controls DOJ and is
16    responsible for the operations of the Index.  The ATTORNEY GENERAL's duties
17    include, without limitation, the enforcement of California's statutes in a manner that
18    does not violate any provision of the United States Constitution or the California
19    Constitution.  The ATTORNEY GENERAL is sued in his official capacity.

20        14.    The true names and capacities of defendants DOES 1 through 10 are
21    unknown to plaintiffs, who therefore bring this action against said defendants by
22    such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the
23    true names and capacities of these defendants when ascertained.

24        15.    Plaintiff is informed and believes and thereon alleges that each of the
25    defendants is responsible in some manner for the events and happenings referred to
26    herein and was the legal cause of injury and damages to plaintiff as herein alleged.

27        16.    In committing the acts and omissions herein described, defendants and
28    each of them, separately and/or in concert, have been and are acting under color of

4
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    the statutes, ordinances, regulations, customs, policies and usages of the State of

2    California and/or the County of Los Angeles.

3    ### IV.   STATEMENT OF FACTS

4    17.    Plaintiffs live in Valencia, California, with their daughter (referred to

5    herein as "J.A."), born September 23, 1989, and Mrs. Humphries' son from a

6    previous marriage (referred to herein as "C.E."), born May 1, 1983.

7    18.    Mr. Humphries also has a teenage daughter from a previous marriage

8    (referred to herein as "S.H.") who, until the summer of 2000, lived in Utah with her

9    mother and successive stepfathers.

10    19.    In or about July, 2000, S.H. was exhibiting behavioral difficulties, and

11    came to live with the Humphries on a one-year, trial basis.  Plaintiffs lovingly

12    incorporated S.H. into their family life: they attended to her needs; encouraged her to

13    partake in family, church, extracurricular and social activities; endeavored to help her

14    achieve academic success; and provided her with care and structure.

15    20.    At or about 1:30 a.m. on March 18, 2001 (a Sunday), after babysitting at

16    another home, S.H. came back to plaintiffs' house and took one of plaintiffs' cars,

17    without plaintiffs' knowledge or consent.  S.H. was then 15 years old and not

18    licensed to drive.

19    21.    Thereafter on March 18, 2001, S.H. drove plaintiffs' car from Valencia,

20    California, to the home of S.H.'s mother's and stepfather in Utah.  Plaintiffs are

21    informed and believe and thereon allege that S.H. did so with the aim of returning to

22    live in Utah.

23    22.    Plaintiffs are informed and believe and thereon allege that, from and

24    including March 19, 2001, to and including April 3, 2001, unbeknownst to plaintiffs,

25    S.H. reported to a police officer and others in Utah that plaintiffs had physically

26    and/or mentally abused S.H. from December 2000 through mid-March, 2001.

27    23.    Plaintiffs are informed and believe and thereon allege that, unbeknownst

28    to plaintiffs, (a) defendant WILSON and/or other LASD employees received reports

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

from a Utah police department, between about March 26 and April 10, 2001, alleging plaintiffs had abused S.H.; and (b) on or about April 10, 2001, WILSON spoke by phone to S.H. in Utah, who told WILSON that plaintiffs had abused her (and only her).  WILSON knew, when he spoke to S.H., that she was 15 years old and not licensed to drive, had stolen plaintiffs' car, and had driven it to Utah.

24.   A reasonable person would have recognized that (a) having stolen plaintiffs' car and driven it hundreds of miles without a driver's license, S.H. had reason to fabricate allegations that plaintiffs had abused her; (b) S.H.'s allegations should not be accepted as reliable without further inquiry to determine their truth or falsity; and (c) S.H.'s allegations did not constitute probable cause for arresting or prosecuting plaintiffs.

25.   S.H.'s allegations of abuse were false, and the reports based thereon were and are  unfounded.  Plaintiffs never abused S.H. or any other child.

26.   Neither defendant WILSON nor any other LASD employee made any reasonable inquiry or investigation of S.H.'s allegations.  Plaintiffs are informed and believe and thereon allege that WILSON relied on or recited S.H.'s false and suspect allegations to obtain warrants for plaintiffs' arrest.

27.   LASD has compiled the false and unfounded allegations and reports received from Utah, together with related records created by WILSON, ANSBERRY, and/or other COUNTY employees under one LASD report number, assigned to both of plaintiffs ("URN Number"); this LASD compilation is referred to hereinafter as the "LASD Reports."

28.   Plaintiffs were unaware, prior to April 16, 2001, that any agency had received or investigated any report or allegation that plaintiffs or either of them had committed child abuse.

29.   On the morning of April 16, 2001, defendants WILSON and/or ANSBERRY arrested Mr. Humphries at his place of business in Valencia, California, and transported him to the school in Saugus where Mrs. Humphries was teaching a

6

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  group of students.  Defendant WILSON and/or ANSBERRY went into the school

2  and arrested Mrs. Humphries, and then transported plaintiffs to the  Santa Clarita

3  Sheriff's Station.  Plaintiffs were booked on felony charges under Penal Code

4  sections 206 (torture) and 273a(a) (cruelty to a child).  Bail for each of them was set

5  at one million dollars – an amount outrageously beyond plaintiffs' reach.

6  Plaintiffs were subsequently incarcerated at the Los Angeles County Jail in

7  downtown Los Angeles.

8      30.    Prior to plaintiffs' arrest, no COUNTY or LASD or COUNTY employee

9  had interviewed plaintiffs, C.E., J.A., S.H.'s neighbors, teachers, treating physicians,

10  school nurse, counselors or friends, or any person in this State with regard to S.H.'s

11  allegations of abuse.  LASD's purported investigation into this matter was

12  incomplete and ineffective, as it was based on a pre-judged conclusion that the

13  Humphries were guilty, and that no further investigation was necessary.

14      31.    On April 16, 2001, after plaintiffs had been booked, WILSON and/or

15  LASD dispatched a Sheriff's patrol car and a uniformed LASD peace officer, who

16  seized J.A. and C.E. at their respective schools, and transported them to the Santa

17  Clarita Sheriff's Station; LASD thus took the children into "protective custody"

18  without a warrant or court order.   WILSON had ample time to obtain a warrant and

19  failed to do so, electing instead to remove the children without judicial authorization.

20      32.    At the time of the warrantless seizure of J.A. and C.E., neither WILSON

21  nor any other COUNTY or LASD employee had probable cause to believe that J.A.

22  and C.E. were in imminent danger of serious bodily injury, or were at risk of any

23  abuse or neglect.

24      33.    WILSON questioned C.E. and J.A. at the Santa Clarita Sheriff's Station

25  on April 16, 2001.  Neither child said that plaintiffs had ever abused or mistreated

26  them.  Later that afternoon, a DCFS worker, Jimi Corona, came to the Sheriff's

27  Station and took custody of C.E. and J.A. based on WILSON's and/or ANSBERRY's

28  assessment of the situation, and without any independent investigation.  C.E. and J.A.

7

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    were detained in a foster home, with persons who were strangers to them.

2    Defendants failed to advise plaintiffs that DCFS had taken custody of their children,

3    or that a written statement was available, explaining plaintiffs' procedural rights and

4    the preliminary stages of a dependency investigation and hearing, as required under

5    Welfare and Institutions Code §§ 307.4(a) and 308(a).

6         34.    On or about April 17, 2001, WILSON prepared several reports with

7    respect to this matter. In one of these documents, labeled a "supplemental report,"

8    WILSON stated inter alia that J.A. and C.E. were taken into "protective custody as

9    there would not be any responsible adult to care for their safety and needs at home."

10    In fact, however, plaintiffs would have been able to arrange for a responsible adult to

11    care for J.A. and C.E. in plaintiffs' absence, but no LASD, DCFS or other COUNTY

12    employee allowed plaintiffs any opportunity to do so.

13         35.    Also, on or about April 17, 2001, without notice to plaintiffs, WILSON

14    executed an application, requesting that the COUNTY file a petition to have J. A. and

15    C. E. declared dependent children of the juvenile court.

16         36.    Plaintiffs are informed and believed and thereon allege that, on or about

17    April 17, 2001, without notice to plaintiffs, WILSON and/or other LASD employees

18    filled in one or more DOJ "child abuse investigation report" forms (DOJ form SS

19    8583) identifying the Humphries as known or suspected child abusers, and that

20    WILSON and/or LASD thereafter sent the completed form or forms to DOJ for entry

21    in the Index.

22         37.    Plaintiffs are informed and believe and thereon allege that, within such

23    SS 8583 report form or forms, WILSON and/or other LASD employees named

24    plaintiffs as child abuse "suspects." Such report or reports on plaintiffs are

25    unfounded, and contain false, prejudicial and stigmatizing information. Plaintiffs are

26    informed and believe, and thereon alleges, that such information was entered into and

27    remains in the Index, and that plaintiffs' Index records identify plaintiff's URN

28    Number, thus indexing the LASD Reports as the underlying investigation file.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1 These Index listings have attach a badge of infamy to plaintiffs, and have altered

2 plaintiffs' status under the laws of this State.

3    38.    On April 18, 2001, the COUNTY filed a misdemeanor complaint in the

4 Los Angeles County Municipal Court, Newhall Judicial District, charging plaintiffs

5 with violations of Penal Code sections 273d(a) (corporal injury to child), and

6 273a(b), (cruelty to child).   The complaint was based essentially on the allegations

7 S.H. had made.   Bail for each plaintiff was reduced to $12,500.   Plaintiffs were

8 released on bail later that day, and returned to their home in Valencia.

9    39.    Plaintiffs are informed and believe, and thereon allege, (a) that WILSON

10 and/or other LASD officers presented the District Attorney with information they

11 knew or should have known to be false; (b) that WILSON and/or other LASD

12 officers caused or pressured the District Attorney to file criminal charges against

13 plaintiffs, contrary to the prosecutor's judgment; and/or (c) that the District Attorney

14 knew, or in the exercise of minimal diligence, should have known, that the charges

15 against plaintiffs were not well founded.

16    40.    The arrest and criminal prosecution of plaintiffs – when even slight

17 diligence would have shown there could be no conviction – constituted want of

18 probable cause and disregard for plaintiffs' rights.

19    41.    On or about April 19, 2001, pursuant to WILSON's application

20 (described in paragraph 35 above), DCFS filed a dependency petition in Los Angeles

21 County Juvenile Court with regard to J.A. and C.E., alleging charges against

22 plaintiffs under Welfare and Institutions Code sections 300(a)(serious physical

23 harm), 300(b)(failure to protect), 300(i) (cruelty), and 300(j) (abuse of sibling).

24    42.    As of April 18, 2001, plaintiffs were no longer incarcerated ,and there

25 was no probable cause to believe that returning J.A. and C.E. to plaintiffs' care and

26 custody would subject the children to any substantial harm.   Nevertheless, DCFS

27 continued to detain the children in foster care, and did not allow them to return to

28 their parents' care and custody until on or about April 26, 2001.

9

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    43.   On or after May 24, 2001, plaintiffs each received by mail a letter from

2    defendant BACA and LASD, postmarked May 23, 2001 (collectively, "Letters").

3    Among other things, the Letters notified plaintiffs, for the first time, that LASD had

4    "completed an investigation of suspected child abuse" in which plaintiffs were

5    named as a suspects; that "this information has been reported to [DOJ] and will be

6    maintained in the Child Abuse Central Index;" and that if plaintiffs believe the report

7    is "unfounded" or that they have "been incorrectly listed and desire a review," they

8    should address their request to LASD's Family Crimes Bureau, "CACI Review" in

9    Whittier.  The Letters' subject lines identified plaintiffs' URN Number.

10   44.   At the time they received the Letters, plaintiffs still were involved in

11   criminal proceedings and dependency proceedings.

12   45.   On or about June 12, 2001, the juvenile court dismissed the allegations

13   of the dependency petition as "not true," and ordered that J.A. remain with plaintiffs.

14   C.E. had already been dismissed from the dependency action (on or about May 1,

15   2001), because he had reached the age of eighteen.

16   46.   The criminal charges against plaintiffs were dismissed by Municipal

17   Court order "in furtherance of justice" pursuant to Penal Code section 1385 on

18   August 29, 2001.

19   47.   In early May, 2002, plaintiffs sought to obtain LASD's review and

20   reversal of their Index listings.  LASD advised plaintiffs (through their counsel) that

21   (a) there was and is no LASD procedure by which plaintiffs may seek LASD's

22   review of its decision to have plaintiffs listed in the Index (despite the Letters'

23   contrary indications); (b) even though the dependency proceedings and the criminal

24   proceedings against plaintiffs were dismissed, LASD will not presently agree to the

25   deletion of plaintiffs' Index listings; and (c) unless plaintiffs seek and obtain a

26   judicial finding of factual innocence, LASD will not advise DOJ to remove plaintiffs'

27   Index listings.

28   //

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

48.    Plaintiffs are informed and believe and thereon allege that, at all times mentioned herein, it has been the COUNTY's and/or LASD's policy or custom:

A.    to overlook facts that exonerate parents accused of child abuse, neglect, to weigh the evidence improperly, to conduct inadequate and incomplete investigations, and consequently, to conclude, erroneously, that parents have abused their children;

B.    to remove children from the custody of their parents without a warrant, without adequate investigation, and without probable cause to believe that the children are at imminent risk of substantial physical injury, or of any abuse or neglect;

C.    in situations where LASD arrests and incarcerates parents on charges of child abuse or neglect, to place those parents' children in foster care with strangers, and not to allow the parents themselves any opportunity to arrange for a responsible adult to care for the children in the parents' absence;

D.    to complete and submit to DOJ a "child abuse investigation report" (DOJ form SS 8583) for entry in the Index, (1) without conducting an active investigation, (2) without applying the mandatory procedures and definitions of Penal Code sections 11165.12(a) and 11169; and (c) without giving the individuals named as "suspects" any opportunity to be heard, at any time, with respect to the foundation, validity, lawfulness or accuracy of such report; and

E.    to refuse to advise DOJ to remove any Index listing that is based on a report submitted by LASD, unless and until the "suspect" named in such report seeks and obtains a judicial finding of factual innocence.

49.    Plaintiffs are informed and believe, and thereon alleges, that in committing the acts and omissions alleged above, defendants BACA, WILSON,

11

1   ANSBERRY and/or COUNTY or LASD employees DOES 1-5 were acting in

2   conformity with those policies and customs of the COUNTY and LASD described

3   in paragraph 48, and that these acts and omissions violate plaintiff's statutory and

4   constitutional rights as set forth below.

5       50.    On or about May 10, 2002, Mr. and Mrs. Humphries each sent a written

6   request to DOJ, asking DOJ to provide him or her, inter alia, (a) with notice of

7   whether DOJ maintains any Index-related records about him or her; (b) exact copies

8   of all records maintained by DOJ, relating to any Index record pertaining to him or

9   her; and (c) an accurate accounting of the date, nature and purpose of each disclosure

10  by DOJ of any Index-related information pertaining to him or her.

11      51.    On or about June 14, 2002, the ATTORNEY GENERAL mailed the

12  Humphries each a letter, dated June 13, 2002 ("AG Letters").  The AG Letters

13  contain identical text, and respond only to plaintiffs' inquiry as to whether or not

14  they are listed in the Index.   The AG Letters notified the Humphries that DOJ's

15  search of the Index, using the names and other identifiers provided in the Humphries'

16  written request, "resulted in a possible match with the suspect of a child abuse

17  investigation report submitted by" LASD,  dated April 17, 2001.  The AG Letters

18  also identify a report number, which matches the Humphries' URN Number.

19      52.    The AG Letters indicate DOJ contacted LASD "to verify the availability

20  of [LASD's] reports and that the reports submitted were not unfounded," and instruct

21  the Humphries to "direct any questions or concerns" to LASD.

22      53.    The AG Letters make no mention of plaintiffs' requests for Index-

23  related records or an accounting of Index record disclosures, nor has DOJ or the

24  ATTORNEY GENERAL provided plaintiffs with any of the items specified in the

25  Humphries' requests.

26      54.    None of the defendants has notified plaintiffs of, or allowed plaintiffs to

27  inspect or correct, either the contents of any "child abuse investigation report" about

28  them which LASD submitted to DOJ, or the Index records that DOJ created from any

12

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1  such report; and defendants have denied plaintiffs any hearing opportunity to

2  challenge LASD's report to, or any listing about them in, the Index.

3      55.    On May 23, 2002, Mr. and Mrs. Humphries each presented a claim for

4  damages to the Los Angeles County Board of Supervisors (collectively, "Claims"), in

5  full or substantial compliance with the California Tort Claims Act, Government

6  Code section 810 et seq.  Each Claim was presented with the respective plaintiff's

7  Application for Leave to Present "Late" Claim ("Application"); the second

8  paragraph of each Application stated as follows:

9          In making this application, [plaintiff] does not waive, and hereby

10         expressly maintains, that [s/he] has only recently discovered some facts
           that are critical to the Claim; the Claim asserts continuing damages and
11         injuries; and the Claim is *timely presented.*

12 (Italics in original)

13     56.    On or about June 6, 2002, the COUNTY mailed a letter in response to

14 Mrs. Humphries's  Claim and Application.  On or about June 7, 2002, the COUNTY

15 mailed a letter in response to Mr. Humphries' Claim and Application.  The COUNTY

16 advised Mr. and Mrs. Humphries, respectively, that the Application was denied, and

17 that "this is not a rejection of your claim; it is only a denial of the application for

18 leave to present a late claim."

19     57.    Plaintiffs allege that their Claims were timely presented, and that such

20 Claims were denied by operation of law on July 7, 2001, i.e., the date 45 days after

21 plaintiffs presented the Claims.

22             **IV.  CHILD ABUSE CENTRAL INDEX SYSTEM**

23     58.    Initially created by State legislation in 1965, the Index is now

24 established under the Child Abuse and Neglect Reporting Act ("CANRA"), Penal

25 Code § 11164 et seq.

26     59.    The Index is a system of records that includes reports received and

27 maintained by DOJ, computerized entries created by DOJ, and records prepared by

28 DOJ for disclosure to persons or entities who request CACI information.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

60.     The computerized component of the Index is also known as the Automated Child Abuse System ("ACAS").  DOJ derives its ACAS entries from untested information that local law enforcement and social services agencies enter on DOJ "child abuse investigation report" forms (currently, "SS 8583" forms) , and send to DOJ by mail, fax, or electronic transmission.   Plaintiffs are informed and believe and thereon allege that the Index holds personal information on approximately two million or more "suspects," "victims" and "others" who have been named in child abuse investigation reports submitted to DOJ from across the State.

61.     Penal Code § 11169(a) mandates, in pertinent part, that an agency "shall not forward a report to [DOJ] unless it has conducted an active investigation and determined that the report is not unfounded, as defined in Section 11165.12." Penal Code § 11165.12(a) defines "unfounded report" as

> a report which is determined by the investigator who conducted the investigation [1] to be false, [2] to be inherently improbable, [3] to involve an accidental injury, or [4] not to constitute child abuse, as defined in Section 11165.6.

62.     Penal Code § 11169(a) also mandates, in pertinent part, that "[i]f a report has previously been filed which subsequently proves to be unfounded, [DOJ] shall be notified in writing of that fact and shall not retain the report."  However, CANRA does not provide any procedure for an individual to seek or obtain an agency's review of its classification of a report, or to seek review of reversal of any Index information.

63.     Penal Code § 11169(b) mandates, in pertinent part, as follows:

> At the time an agency specified in Section 11165.9 forwards a report in writing to the Department of Justice pursuant to subdivision (a), the agency shall also notify in writing the known or suspected child abuser that he or she has been reported to the Child Abuse Central Index. The notice required by this section shall be in a form approved by [DOJ].

64.     Index record information is accessible by a wide range of third parties under Penal Code §§ 11167.5, 11170, 11170.5 and 11170.6, including investigative

14
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  agencies inside and outside California, licensing agencies, employment screening

2  agencies, public and private adoption agencies, and others.   Indeed, under California

3  law, applicants for various licenses, certificates, jobs or voluntary positions involving

4  contact with children *must* be screened through the Index, and the screening agency

5  must deny the sought-after license, certificate, job or position if the agency

6  determines (unilaterally) that a CACI-listed report on the applicant or employee is

7  "substantiated."

8      65.    Pursuant to CANRA, various third parties who obtain CACI information

9  from DOJ are "responsible" for obtaining the original investigative report from the

10  reporting agency to decide whether the listed child abuse incident is "substantiated."

11      66.    Accordingly, licensors, certification agencies, employers and others who

12  have access to plaintiffs' CACI records are directed to review the false and

13  misleading LASD Reports pertaining to plaintiffs, and based on those false and

14  misleading records,  to decide  – unilaterally and extrajudicially – whether the child

15  abuse accusation against plaintiffs was "substantiated."

16      67.    Further, persons or entities who receive Index information from DOJ

17  may, in turn, pass it on to additional third parties.  For example, the California

18  Department of Social Services ("DSS") obtains Index information for purposes of

19  licensing and certification.  On information and belief, DSS maintains the policy and

20  practice of disclosing Index data to other agencies, including but not limited to the

21  California Commission on Teacher Credentialing.

22      68.    Thus, plaintiffs may be denied employment, certification, registration,

23  licenses or permission to adopt a child, based upon the employers' and/or agencies'

24  receipt of Index data and assessment of the LASD Reports.

25  ### V.   STATEMENT OF DAMAGES

26      69.    As a direct and proximate result of the incidents and deprivations of

27  rights alleged in this complaint, plaintiffs have sustained injuries and damages

28  including, but not limited to, pain, suffering, injuries to their bodies, damage to

15

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    familial relations, severe emotional distress, fear, anxiety and humiliation, all to

2    their general damage in an amount according to proof.

3        70.    As a further direct and proximate result of the incidents and

4    deprivations of rights alleged in this complaint, plaintiffs have suffered loss of

5    income, and have incurred attorneys' fees, expenses for medical and psychological

6    care and other incidental expenses, all to their special damage in an amount

7    according to proof.

8        71.    The injuries to plaintiff and the violations of plaintiff's statutory and

9    constitutional rights stemming from the acts and omissions of defendants, as alleged

10   herein, are continuous and ongoing.

11       72.    More particularly, but without limitation, plaintiffs' registration in the

12   Index has caused and causes great and continuous damage to plaintiffs' familial

13   relations and integrity, to their personal and professional reputations, and to their

14   emotional state; has impaired Mrs. Humphries' ability to retain her certification as a

15   teacher in California, and to achieve additional teaching certificates; and has

16   prevented plaintiffs from participating in teaching, tutoring, coaching and other

17   activities.

18       73.    Plaintiffs have incurred, and will continue to incur, reasonable

19   attorney's fees and costs in bringing and maintaining this action, and plaintiffs are

20   entitled to such fees and costs pursuant to 42 U.S.C. § 1988.

21                          **VI.  CLAIMS**

22                       <u>FIRST CAUSE OF ACTION</u>

23       DAMAGES FOR VIOLATIONS OF U.S. CONSTITUTIONAL RIGHTS

24                          42 U.S.C. § 1983

25              (Against defendants COUNTY, BACA, WILSON,

26                     ANSBERRY and DOES 1-5)

27       74.    Plaintiffs incorporate by reference the foregoing paragraphs of this

28   complaint as though fully set forth herein.

                                16

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

75. Defendants WILSON, ANSBERRY, BACA and DOES 1-5, and in conjunction defendant COUNTY acting under its policies and customs, and each of them, acting under color of state law, have subjected plaintiffs, or have caused plaintiff to be subjected, to the deprivation of certain rights, privileges and immunities to which plaintiffs are entitled under the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the U.S. Constitution, including but not limited to:

 (a)  the right to substantive due process of law;

 (b)  the right to procedural due process of law;

 (c)  the right to be free from unlawful searches and seizures;

 (d)  the right to be free from malicious prosecution;

 (e)  the right to be informed of the nature and cause of the criminal accusations against them;

 (f)  the right to be free from unreasonable interference with parent-child relationships;

 (g)  the right to be free from arbitrary intrusions on plaintiffs' physical and emotional well-being; and

 (h)  the right to privacy.

76. As a direct and proximate cause of the acts complained of herein, plaintiffs have suffered general and special damages as set forth in this complaint.

## SECOND CAUSE OF ACTION

### INJUNCTIVE RELIEF FOR VIOLATIONS OF U.S. CONSTITUTIONAL RIGHTS

### 42 U.S.C. § 1983

### (Against defendants COUNTY, BACA, WILSON, ANSBERRY and ATTORNEY GENERAL)

77. Plaintiffs incorporate by reference the foregoing paragraphs of this complaint as though fully set forth herein.

//

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

78.    The ATTORNEY GENERAL and DOJ maintain, and at all times mentioned herein have maintained, the policies and customs of (a) entering and retaining in, and disclosing from, the CACI, purported child abuse information that has never been substantiated by any court of law or adjudicating body; (b) refusing to delete any information, data and/or record from the CACI unless the very agency that submitted the underlying "child abuse investigation report" notifies DOJ that the report is or was "unfounded"; (c) prohibiting the reported persons from having access to, knowing the contents of, or inspecting any information, data and/or record on them maintained in the CACI; (d) failing to allow persons listed in the CACI to correct or supplement any CACI information, data and/or record pertaining to them; and (e) failing to provide CACI-listed individuals with any means to challenge the accuracy or validity of Index data that DOJ maintains on them.  The ATTORNEY GENERAL has applied, and continues to apply, these policies to plaintiffs.

79.    In doing the acts and applying the policies and customs complained of herein, the ATTORNEY GENERAL, acting under color of state law, has subjected plaintiffs, or has caused plaintiffs to be subjected, to the deprivation of certain rights, privileges and immunities to which plaintiffs are entitled under the United States Constitution, including but not limited to rights of privacy, substantive due process and procedural due process.

80.    Plaintiffs are suffering irreparable injury as a result of the acts and omissions of defendants, and each of them, as alleged in this complaint.

81.    Plaintiffs are without a plain, speedy and adequate remedy at law.

82.    Plaintiffs are living under constant fear and restriction of their liberty, as a result of being listed in the Index.  They are prevented from applying for certificates, jobs and positions, and/or from undertaking certain activities that involve contact with children, for fear that doing so will trigger a CACI background search, and in turn, will cause the dissemination of their false and stigmatizing Index listings and the related LASD Reports.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

83.     Plaintiffs are entitled to injunctive relief to (a) compel the ATTORNEY GENERAL to permit plaintiffs to inspect and challenge their Index records; (b) compel BACA, WILSON and/or ANSBERRY, on behalf of LASD and the COUNTY, to notify DOJ in writing that the report or reports about plaintiffs that LASD submitted for registry in the Index are unfounded, so that DOJ will delete from the Index, and no longer retain, any and all records pertaining to plaintiffs; and (c) enjoin the ATTORNEY GENERAL and DOJ from retaining in and disclosing from the Index any information pertaining to plaintiffs.

### THIRD CAUSE OF ACTION

### DENIAL OF RIGHT OF PRIVACY - ART. I, § 1, CA. CONST.

(Against all defendants)

84.     Plaintiffs incorporate by reference the foregoing paragraphs of this complaint as though fully set forth herein.

85.     Plaintiffs have a legally protected privacy interest in information pertaining to them, contained in any Index records and related reports about them, including but not limited to a legally protected interest in being afforded a reasonable check on the accuracy of that information. It was and is reasonable for plaintiff to expect that defendants will preserve and not violate this privacy interest.

86.     Defendants' maintenance of false and unfounded Index information on plaintiffs, and defendants' refusals to provide plaintiff with any access to, or any procedure to check, correct, amend or dispute, the Index-related records about plaintiffs, have invaded and continue to invade plaintiff's privacy interests in a non-trivial, significant way.

87.     The acts and omissions of defendants and each of them, alleged herein, constitute a violation of Article I, section 1 of the California Constitution, which protects individuals in this State from invasion of privacy.

88.     By reason of the wrongful acts and omissions of defendants, and each of them, plaintiff has suffered a loss of his constitutional privacy rights, causing him to

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

1    sustain great and continuous emotional distress, damage to his familial relations and

2    other damages, in an amount to be proven at trial.

3                                          PRAYER

4         WHEREFORE, plaintiffs pray for relief as follows:

5         1.      For general, special and compensatory damages according to proof;

6         2.      For a preliminary and continuous injunction, ordering

7                 (a)  the ATTORNEY GENERAL to permit plaintiffs to inspect and

8    challenge their Index records;

9                 (b)  BACA, WILSON and/or ANSBERRY, on behalf of LASD and the

10   COUNTY, to notify DOJ in writing that the report or reports about plaintiffs that

11   LASD submitted for registry in the Index are unfounded, so that DOJ will delete

12   from the Index, and no longer retain, any and all records pertaining to plaintiffs; and

13                (c)  the ATTORNEY GENERAL to refrain from retaining in and

14   disclosing from the Index any information pertaining to plaintiffs.

15        3.      For reasonable attorneys' fees;

16        4.      For costs of suit; and

17        5.      For such other and further relief as this Court may deem just and proper.

18   DATED:  August 27, 2002          ESTHER G. BOYNTON

19

20                                     By:  _____

21                                           Esther G. Boynton
                                             Attorney for plaintiffs
22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

# DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury of all issues in this case triable by jury.

DATED:  August 27, 2002                    ESTHER G. BOYNTON

By: _____
                                           Esther G. Boynton
                                           Attorney for plaintiffs

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**